FILED
4/1/26 8:43 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Case No. 24-21065-GLT |
| | : | |
| **MARISSA R. DUNN**, | : | Chapter 13 |
| | : | |
| *Debtor.* | : | |
| | : | |
| | : | |
| **RONDA J. WINNECOUR**, in her capacity as | : | |
| **CHAPTER 13 TRUSTEE**, | : | |
| | : | |
| *Movant,* | : | Related to Dkt. Nos. 34, 36 |
| | : | |
| v. | : | |
| | : | |
| **PENNYMAC LOAN SERVICING, LLC**, | : | |
| | : | |
| *Respondent.* | : | |
| | : | |

Ronda J. Winnecour, Esq.        Jill Manuel-Coughlin, Esq.
Owen Katz, Esq.                Harry B. Reese, Esq.
Office of the Chapter 13 Trustee        Karina Velter, Esq.
Pittsburgh, PA                Powers Kirn, LLC
*Attorneys for the Chapter 13 trustee*        Trevose, PA
                *Attorneys for the Pennymac Loan Servicing, LLC*

### <u>MEMORANDUM OPINION</u>

The chapter 13 trustee (the "Trustee") seeks disallowance of the post-petition attorney's fees sought by Pennymac Loan Servicing, LLC, debtor Marissa R. Dunn's mortgagee, as unreasonable.[1] The essence of her objection is that $1,700 is just too much given the undeniable simplicity of the Debtor's chapter 13 case. Frustrated by the Trustee's generalized attack and its implications, Pennymac not only insists that its fees are adequately supported by time records but should represent presumptively reasonable flat rates.[2] The parties clearly desire a broader ruling

---

[1] *Trustee's Motion to Preclude Notice of Post-Petition Mortgage Fees, Expenses, and Charges*, Dkt. No. 34.

[2] *Response to Trustee's Motion to Preclude Notice of Post-Petition Mortgage Fees, Expenses, and Charges*, Dkt. No. 36.

that discourages future disputes between them over post-petition fees, but reasonableness is a narrow issue governed by decades-old standards.  For the reasons below, the Court finds that Pennymac's fees must be reduced by $242 but are otherwise reasonable.

## I.   BACKGROUND

Facing an impending foreclosure,[3] the Debtor commenced this chapter 13 case on April 30, 2024.  She resides at 160 Iola Avenue in Washington, Pennsylvania (the "Property") which is encumbered by a mortgage held by Pennymac securing a $174,167.34 loan.[4]  On *Schedule A/B*, the Debtor listed the Property's fair market value as $178,000,[5] and the parties do not dispute that its value exceeds the outstanding indebtedness.

The Debtor's case is uncomplicated and has proceeded reasonably apace.  She initially filed only a skeletal petition, but after two extensions, the Debtor submitted her schedules[6] and chapter 13 plan (the "Plan") on May 28, 2024.[7]  The Plan contemplated curing an estimated $18,000 pre-petition mortgage arrearage over five years while continuing to make regular payments to Pennymac.[8]  Although the Plan also provided for attorney's fees and ongoing vehicle loan payments, general unsecured creditors would not receive a distribution.[9]

Pennymac filed a five-sentence form objection to confirmation asserting that the Debtor underestimated the prepetition arrearage of $22,087.75.[10]  Roughly two weeks later,

---

[3]     See *Statement of Financial Affairs for Individuals Filing for Bankruptcy*, Dkt. No. 13-2 at 31.

[4]     See *Schedule A/B: Property*, Dkt. No. 13-2 at 3; *Claim 7-1*, Case No. 24-21065-GLT.

[5]     See *Schedule A/B: Property*, Dkt. No. 13-2 at 3.

[6]     See Dkt. No. 13-2.

[7]     See *Chapter 13 Plan Dated May 28, 2024*, Dkt. No. 14.

[8]     Id. at 2.

[9]     Id. at 2-6.

[10]    *Objection to Confirmation of the Plan*, Dkt. No. 22.  The Court notes that the objection was filed by Attorney Harry B. Reese.

Pennymac filed a proof of claim consistent with the objection (the "Claim").[11]  The Claim was prepared by Attorney Karina Velter and was accompanied by the requisite loan history.[12]

The Trustee held and concluded the meeting of creditors on July 8, 2024.[13]  It is unclear how long the meeting was, but the parties agree that Attorney Velter attended on behalf of Pennymac.  Afterward, the Trustee recommended the plan for final confirmation and the Debtor submitted a proposed order that increased the monthly payment obligation to cover the shortfall to Pennymac.[14]  The Court entered the confirmation order on July 11, 2024.[15]

On September 26, 2024, Pennymac filed a *Notice of Postpetition Mortgage Fees, Expenses, and Charges* (the "Notice") seeking $1,700 for attorneys' fees incurred during the bankruptcy.[16]  The *Notice*, also prepared by Attorney Velter, included the following itemization:[17]

| Description | Dates Incurred | Amount |
| --- | --- | --- |
| Attorney fees | 5/29/24 – Plan Review/Monitor | $570.00 |
| Bankruptcy/Proof of claim fees | 6/19/24 – POC | $380.00 |
| Plan Objection – includes conciliation attendance | 6/7/24 | $500.00 |
| POC 410A History | 6/19/24 | $250.00 |

Three invoices were attached to the *Notice* revealing these charges were billed to Pennymac as flat fees.[18]  Even so, Attorney Velter also attached her time records (reproduced below) in support of the fees.[19]

---

[11]     *Claim 7-1*, Case No. 24-21065-GLT.

[12]     Id.

[13]     See Dkt. No. 23.

[14]     See Dkt. Nos. 23-24.

[15]     See *Order of Court*, Dkt No. 25.

[16]     *Notice of Postpetition Mortgage Fees, Expenses, and Charges*, Claim 7-1, dated 9/26/2024.

[17]     Id.

[18]     Id. at Exhibit A.

[19]     Id.   Since Attorney Velter is the only professional listed in the time records, the Court omitted the "Professional" column from the reproduced table.

3

| Date | Activity | Hours | Rate | Total |
|---|---|---|---|---|
| 5/1/2024 | Received and reviewed Notification regarding BK filing. | 0.10 | $215.00 | $21.50 |
| 5/1/2024 | Reviewed docket in debtor's case, Debtor's incomplete Chapter 13 petition and notice from the court with deadlines. Updated client regarding same. Prepared and filed Notice of Appearance.[20] | 0.50 | $215.00 | $107.50 |
| 5/29/2024 | Reviewed client's payment history in conjunction with review of debtor's plan to determine whether plan treatment is adequate. | 1.30 | $215.00 | $279.50 |
| 5/29/2024 | Review loan documents in preparation of POC | 1.00 | $215.00 | $215.00 |
| 5/29/2024 | Reviewed Debtor's completed Ch13 petition and proposed Plan. | 1.20 | $215.00 | $258.00 |
| 6/6/2024 | Prepare 410A | 2.00 | $215.00 | $430.00 |
| 6/6/2024 | Redact Loan Documents / Exhibits | 0.20 | $215.00 | $43.00 |
| 6/7/2024 | Prepared and filed Objection to Debtor's Chapter 13 Plan[21] | 1.20 | $215.00 | $258.00 |
| 6/19/2024 | Corresponded with client regarding POC prep and provided documents to client for validation prior to filing | 0.30 | $215.00 | $64.50 |
| 6/19/2024 | Received and Reviewed validated Proof of Claim | 0.20 | $215.00 | $43.00 |
| 6/19/2024 | Filed Proof of Claim | 0.30 | $215.00 | $64.50 |
| 6/19/2024 | Conduct Military Searches | 0.20 | $215.00 | $43.00 |
| 6/19/2024 | Submit Filed Proof of claim to Client | 0.10 | $215.00 | $21.50 |
| **TOTAL** | | | | **$1,849.00** |

Although the Debtor did not object to the *Notice*, the Trustee filed the *Motion to Preclude* nearly a year later.[22]   The *Motion to Preclude* is a sparse, non-specific, form-like document.  It primarily insists that Pennymac failed to justify flat fees through a lodestar analysis without acknowledging the attached time records.[23]  Pennymac countered with a lengthy response

---

[20]     The docket reflects that the notice of appearance was filed by Attorney Jill Manuel-Coughlin, not Attorney Velter.

[21]     The docket reflects that the objection to confirmation was filed by Attorney Reese, not Attorney Velter.

[22]     *Trustee's Motion to Preclude Notice of Post-Petition Mortgage Fees, Expenses, and Charges*, Dkt. No. 34.

[23]     Id. at ¶ 5.

arguing that the Trustee put forward no meaningful reason to deny its fees.[24]  After a hearing with substantial oral argument from both parties, the Court took the matter under advisement.

## II.     JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## III.    POSITIONS OF THE PARTIES

### A.     The Trustee

Emphasizing that Pennymac's fees are not presumptively valid, the Trustee maintains that she is "well within her rights to ask the Court to review the reasonableness of this request."[25]  Her core concern is that the total fees sought are (in her view) facially disproportionate to a chapter 13 case that is as straightforward as they come.  Undoubtedly, the Trustee is equally motivated by the corollary of that point: if $1,700 is reasonable in *this* case, then it would be reasonable in almost every case.  Yet while the *Motion to Preclude* asks that the "Notice be disallowed,"[26] her objection is hard to pin down with any specificity.

In the *Motion to Preclude*, the Trustee observed that "[t]he fees appear to be a flat rate" and contends that "reasonable legal fees in this district are determined by the lodestar formula."[27]  Since time records accompanied the *Notice*, her assertion that "the notice does not

---

[24]   *Response to Trustee's Motion to Preclude Notice of Post-Petition Mortgage Fees, Expenses, and Charges*, Dkt. No. 36 at ¶ 3.

[25]   *Audio Recording of October 6, 2025 Hearing* at 9:52:18-9:52:24 a.m.

[26]   *Trustee's Motion to Preclude Notice of Post-Petition Mortgage Fees, Expenses, and Charges*, Dkt. No. 34 at 2.

[27]   Id. at ¶ 5.

contain proof of [a lodestar analysis]"[28] might appear to be a mistake. Pennymac, however, understood these statements to be a conceptual challenge to the use of flat rates as inherently detached from any lodestar. The Trustee did not clarify or address this point during the hearing, so it is unclear if that was her intention.

The one specific objection raised in the *Motion to Preclude* pertained to $630 of fees "in some way related to the filing of a proof of claim."[29] The Trustee argued that "the filing of a proof of claim is an administrative matter not requiring *counsel*," rendering them unreasonable.[30] But even if *legal fees* for the preparation of a proof of claim can be appropriate, she insists that the amount remains unreasonable.[31] When the Court later noted that the Trustee seldom raises administrative rate objections to debtor's counsel's fees, she responded that she first considers the overall reasonableness of the request.[32]

During the hearing, the Trustee shifted her challenge to areas where excessive time was allegedly spent, including 2.5 hours reviewing the case and 1.2 hours preparing a five-paragraph objection.[33] Although she does not contest the necessity of an hour spent reviewing the loan documents, she questioned the hours expended preparing the proof of claim.[34] Ultimately, however, the Trustee does not dispute the need to file a proof of claim or an objection to

---

[28]    Id.

[29]    Id. at ¶ 6.

[30]    Id. (emphasis added).

[31]    Id.

[32]    *Audio Recording of October 6, 2025 Hearing* at 9:59:56-10:00:53 a.m.

[33]    Id. at 9:54:56-9:55:48 a.m.

[34]    Id. at 9:56:38-9:58:28 a.m.

confirmation.    And she notably conceded that the rate used by Pennymac's counsel was "exceedingly reasonable."[35]

In closing, the Trustee requested that the Court bar Pennymac from passing the cost of defending the *Notice* to the Debtor.[36]

B.    Pennymac

Pennymac and its counsel feel bullied by the Trustee.    In an 11-page response to her two-page *Motion to Preclude*, Pennymac asserted that the Trustee failed to "identify any meaningful reason why these fees should be denied."[37]  Pennymac then expressed frustration over the Trustee advancing different objections at the hearing than appeared in writing. Notwithstanding the surprise, Pennymac stood on its response which advanced two main lines of argument.

First, Pennymac contends that its fees are reasonable and that it complied with all applicable filing requirements, including attaching a lodestar and invoices.[38]  Noting that Attorney Velter's hourly rate of $215 is below market for someone with twenty-years' experience, Pennymac emphasizes that its actual request is still $149 less than her billable time.[39]  Pennymac also contests the assertion that the filing of a proof of claim is "an administrative matter not requiring counsel[.]" It contends this argument is "irrational, unsupported, and contrary to fundamental bankruptcy law, practice, and procedure."[40]

---

[35]    Id. at 10:01:23-10:01:40 a.m.

[36]    *Trustee's Motion to Preclude Notice of Post-Petition Mortgage Fees, Expenses, and Charges*, Dkt. No. 34 at ¶ 8.

[37]    *Response to Trustee's Motion to Preclude Notice of Post-Petition Mortgage Fees, Expenses, and Charges*, Dkt. No. 36 at ¶ 3.

[38]    Id. at ¶ 1.

[39]    Id. at ¶ 5.

[40]    Id. at ¶ 6.

Pennymac's second line of argument broadly challenges the basis of this inquiry, characterizing the need to attach invoices and a lodestar as an "***unwritten local requirement***."[41] Instead, Pennymac contends that "the only relevant question is whether the amount reflected in the [*Notice*] is in fact the amount that the Debtor would be obligated to pay under non-bankruptcy law."[42]  From there, Pennymac argues that the Pennsylvania legislature enacted a law deeming fees conforming to the guidelines promulgated by the Federal National Mortgage Association ("Fannie Mae") as presumptively reasonable (the "Guidelines").[43]  Since Pennymac uses flat rates that "significantly match" the Guidelines, it contends they are reasonable and collectable under Pennsylvania law.[44]  Pennymac further stresses that not only are these rates less than the actual time billed, but cover services yet to be provided.  For example, the flat fee for a plan objection includes "all objections to the original plan along with objections to up to two amended plans, attendance at up to two hearings, and the preparation of a stipulation if necessary."[45]  Pennymac also criticizes the lodestar requirement as "unduly burdensome" because it prevents lenders from completing notices in-house without a need for counsel.[46]

Finally, Pennymac agrees that the cost to defend the *Notice* from the Trustee's baseless objection should not be borne by the Debtor.[47]  Still, Pennymac (not unlike the Trustee) seeks a ruling that will narrow or eliminate objections in the future.

---

[41]    Id. at ¶ 1 (bold and italic in original).

[42]    Id. at ¶ 5.

[43]    Id. (citing 68 Pa. Stat. and Cons. Stat. Ann. § 2311(a)); see *Exhibit A*, Dkt. No. 36-3 ("Fannie Mae Allowable Bankruptcy Attorney Fees Exhibit").

[44]    Id.

[45]    Id.

[46]    Id. at n.1.

[47]    Id. at ¶ 8.

8

## IV.   DISCUSSION

Under section 506(b) of the Bankruptcy Code,[48] a secured creditor may recover its attorneys' fees and expenses if: (1) they are provided for by the agreement, or state statute, under which the creditor's claim arose; (2) the creditor is oversecured in excess of the fees and expenses requested; and (3) the fees and expenses are reasonable.[49]   To seek reimbursement of any post-petition fees, expenses, and charges, a secured creditor must comply with Bankruptcy Rule 3002.1(c).   It requires the secured creditor to promptly file "a notice itemizing all fees, expenses, and charges incurred after the case was filed that the holder asserts are recoverable against the debtor or the debtor's principal residence."[50]   Within a year of any such notice, a party in interest may request a determination of whether "any claimed fee, expense, or charge is required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments under § 1322(b)(5)."[51]   Although the notice is a supplement to the creditor's proof of claim, it is not entitled to a presumption of validity.[52]   Instead, the creditor must establish its claim for fees and expenses by a preponderance of the evidence.[53]

Here, the parties agree that Pennymac is oversecured and its loan agreement permits the recovery of reasonable attorney's fees.   Therefore, the sole issue is whether the requested attorney's fees are reasonable.

---

[48]   Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, *et seq*. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[49]   11 U.S.C. § 506(b); see Winnecour v. First Commonwealth Bank (In re Susanek), No. 12-23545-GLT, 2014 WL 4960885, at *3 (Bankr. W.D. Pa. Sept. 30, 2014); Washington Fed. Savs. Bank v. McGuier (In re McGuier), 346 B.R. 151, 158 (Bankr. W.D. Pa. 2006).

[50]   Fed. R. Bankr. P. 3002.1(c).

[51]   Fed. R. Bankr. P. 3002.1(e).

[52]   Fed. R. Bankr. P. 3002.1(d).

[53]   See In re Blakey, 664 B.R. 221, 224 (Bankr. W.D. Pa. 2024); In re Susanek, 2014 WL 4960885, at *2.

The statutory mandate that legal fees and expenses be reasonable is neither new nor complex. At base, the inquiry simply requires a "fair and proper"[54] correlation between the value of the services rendered and its cost.[55] To establish this correlation, a secured creditor should provide "detailed descriptions of the services rendered, supporting documentation, as well as any appropriate, other evidence necessary for the Court to make a favorable determination."[56] After all, "[t]he bankruptcy court enjoys very broad discretion in determining the necessity and reasonableness of attorney fees claimed by an oversecured creditor."[57]

A.      The Reasonableness of Flat Attorney Fees for Mortgage Servicers

Because the *Notice* was accompanied by invoices and time records allowing for a typical lodestar analysis, the use of flat fees in this case strikes the Court as a red herring. But Pennymac urges the Court to drop the lodestar in favor of a brightline acceptance of flat fees. In fact, Pennymac protests the legal basis for a lodestar analysis in this context. The Court will therefore address these concerns before evaluating the fees in this case.

To cut right to it: *flat fees are not inherently reasonable or unreasonable*. Section 506(b) mandates that only reasonable fees and expenses may be recovered, extending the relevant inquiry beyond simply what Pennymac paid its counsel or state law permits. To be clear, the question is one of federal bankruptcy law over which Congress has exclusive legislative power.[58]

---

[54]    REASONABLE, *Black's Law Dictionary* (12th ed. 2024).

[55]    See In re Busy Beaver Bldg. Centers, Inc., 19 F.3d 833, 848 (3d Cir. 1994) (the reasonableness of attorney's fees are "based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services . . . ."); see also In re Blakey, 664 B.R. at 224 (high cost of forced-placed insurance coverage that substantially exceeded the value of the property was objectively unreasonable).

[56]    In re McGuier, 346 B.R. at 158.

[57]    Id. at 164 (citing In re Danise, 112 B.R. 492 (Bankr. D. Conn. 1990) and In re Gwyn, 150 B.R. 150 (Bankr. M.D.N.C. 1993)).

[58]    See U.S. Const. Art. I, § 8, cl. 4; U.S. Const. Art. VI, cl. 2; see also Int'l Shoe Co. v. Pinkus, 278 U.S. 261, 265 (1929) (States may not pass or enforce laws to interfere with or complement the Bankruptcy [Code] or to provide additional or auxiliary regulations.").

Neither Fannie Mae nor the Pennsylvania legislature may settle the issue. A presumption of reasonableness—which is all Pennsylvania law grants outside of bankruptcy[59]—is innately rebuttable and hardly amounts to a protected property interest. For better or worse, that presumption is incompatible with Bankruptcy Rule 3002.1(d).[60]

To the extent that Pennymac laments the need to comply with "unduly burdensome"[61] "unwritten local requirement[s] . . . promulgated by the now retired Judge Agresti,"[62] it fundamentally misunderstands the standards. Putting aside the disingenuous "unwritten" characterization, a lender need not provide a lodestar in support of post-petition attorney's fees. The requirement is that Pennymac establish the reasonableness of its fees by a preponderance of the evidence. In *In re McGuier*, Bankruptcy Judge Thomas P. Agresti (ret.) held that burden is satisfied

> by providing the court with detailed descriptions of the services rendered, supporting documentation, as well as any appropriate, other evidence necessary for the Court to make a favorable determination on the application for payment.[63]

A lodestar analysis is certainly a tried-and-true method that fits the description, but the *requirement* is merely proof of reasonableness.

As a practical matter, could the reasonableness of a lender's attorney's fees be proven by a means other than a lodestar? Perhaps, but Pennymac's proposed solution that the

---

[59]    See 68 Pa. Stat. and Cons. Stat. Ann. § 2311 ("Attorney fees are *presumed* to be reasonable under paragraph (1) if they . . .") (emphasis added).

[60]    See Fed. R. Bankr. P. 3002.1(d); In re Susanek, 2014 WL 4960885, at *2 ("Without the benefit of this presumption, the notice is more susceptible to challenge").

[61]    *Response to Trustee's Motion to Preclude Notice of Post-Petition Mortgage Fees, Expenses, and Charges*, Dkt. No. 36 at n.1.

[62]    Id. at ¶ 1 (bold and italic omitted).

[63]    In re McGuier, 346 B.R. at 158.

11

Court simply defer to the Guidelines is problematic.  As observed by Judge Agresti in *In re Dworek*,

> the Guidelines themselves provide that the fees stated therein are the "maximum" to be allowed. This reference clearly indicates that some inquiry as to reasonableness is required, even if the Guidelines were to be considered.[64]

Assuming that Pennymac would counter that anything below the maximum should be deemed reasonable, it overlooks the unreasonably disparate impact of that view.  If the Guidelines set maximum fees for bundles of services which may or may not be provided in a particular case, how can the maximum always be reasonable?[65]  Put differently, how can a lender reasonably foist the cost of a service it has not received on the debtor?  Answer: it cannot.  This type of disjoint is precisely why section 506(b) conditions the recovery of fees from the debtor on reasonableness and demands something akin to a lodestar as proof.

Ultimately, the issue is not whether flat fees can be reasonable but how one proves it.  Logically, flat fees could theoretically introduce efficiency and economy into post-petition mortgage charges.  Adopting a local rule setting a presumptively reasonable "no-look" fee for chapter 13 debtor's counsel arguably had a similar effect.[66]  Critically though, the no-look fee was established only after years of data demonstrated a minimum cost for base chapter 13 legal services.  And counsel often seek compensation above the no-look amount to complete the case, forcing them to provide records justifying all incurred fees anyway.  If lenders wish to avoid lodestars in favor of pre-established reasonable flat fees, the feasibility of doing so should be similarly studied by the local rules committee.  Indeed, before such a rule could be adopted, all

---

[64]    Quicken Loans, Inc. v. Winnecour (In re Dworek), 589 B.R. 267, 270 n.2 (Bankr. W.D. Pa. 2018).

[65]    See *Exhibit A*, Dkt. No. 36-3.

[66]    See W.PA.LBR 2016-1(f).

12

stakeholders would need confidence that substantial historical data supported the reasonableness of any proposed flat fee for all cases.

B.     The Reasonableness of Pennymac's Fees in this Case

As previewed above, Pennymac attached invoices and a lodestar to the *Notice* in support of the reasonableness of the flat fees it paid for legal services. While Pennymac asserts that reasonableness is apparent by the cost of the services provided by Attorney Velter exceeding the requested fees, this improperly compares totals without categorization. Given that Pennymac seeks to recover flat fees for defined items, a proper analysis evaluates the time spent on those items in relation to the flat fee.

Before delving into Attorney Velter's time, the Court must consider the rate applied. The Court agrees with the Trustee that an hourly rate of $215 is "exceedingly reasonable" for an attorney with over 20-years' experience.[67] For context, the hourly rates for the Debtor's counsel are between $300 and $400.[68] With such a substantially reduced rate, the lodestar can tolerate a degree of time inefficiency without altering the calculus. Similarly, while $215 per hour is higher than a typical administrative rate for ministerial tasks, it is reasonable to consider whether the attorney-time savings offset the excess administrative charge.

Turning to the first category of fees, Pennymac seeks $570 for "Plan Reviews/Monitor." The following time entries relate to this task:

| Date | Activity | Hours | Rate | Total |
|---|---|---|---|---|
| 5/1/2024 | Received and reviewed Notification regarding BK filing. | 0.10 | $215.00 | $21.50 |
| 5/1/2024 | Reviewed docket in debtor's case, Debtor's incomplete Chapter 13 petition and notice from the court with deadlines. Updated client regarding same. Prepared and filed Notice of Appearance. | 0.50 | $215.00 | $107.50 |

---

[67]     *Audio Recording of October 6, 2025 Hearing* at 10:01:23-10:01:40 a.m.

[68]     See *Disclosure of Compensation of Attorney's for Debtor(s)*, Dkt. No. 13-2 at 44.

| Date | Activity | Hours | Rate | Total |
|---|---|---|---|---|
| 5/29/2024 | Reviewed client's payment history in conjunction with review of debtor' plan to determine whether plan treatment is adequate. | 1.30 | $215.00 | $279.50 |
| 5/29/2024 | Reviewed Debtor's completed Ch13 petition and proposed Plan. | 1.20 | $215.00 | $258.00 |
| | **TOTAL** | **3.10** | | **$666.50** |

The first two entries are ministerial tasks that should be subject to a lower rate. And 2.5 hours spent reviewing the Debtor's plan, schedules, and payment history seems a bit much. That said, the fees sought are nearly $100 less than the cost calculation so the *Notice* seemingly corrects the issue. As such, the Court finds the request of $570 for these services is reasonable.

Next, Pennymac requests $500 for preparing the plan objection and attending the meeting of creditors. Only one time entry appears relevant:

| Date | Activity | Hours | Rate | Total |
|---|---|---|---|---|
| 6/7/2024 | Prepared and filed Objection to Debtor's Chapter 13 Plan | 1.20 | $215.00 | $258.00 |
| | **TOTAL** | **1.20** | | **$258.00** |

The Court agrees that 1.2 hours spent drafting a five-line objection focused solely on understated mortgage arrears is excessive. But it is undisputed that Pennymac attended the meeting of creditors even though there is no time entry for it. If the Court factored meeting attendance into the 1.2 hours, $258 is inoffensive. Of course, Pennymac seeks nearly twice that amount, asserting that the fee covers additional services—like amended plan objections—yet to be provided. While it may be commercially advantageous for lenders to pay flat fees to bundle prospective services, it is unreasonable to shift the cost of unperformed work to a debtor. Pennymac may not view it this way, but each plan objection has a cost. By its own analysis, the objection here was worth no more than $258. As a result, the Court finds that fees of only $258 were reasonable for this task.

14

The final two categories relate to the preparation and filing of the proof of claim—$380 for "POC" and $250 for "POC 410A History."  Due to the potential overlap, the Court will evaluate the remaining time entries against the combined total of $630 for both.

| Date | Activity | Hours | Rate | Total |
|---|---|---|---|---|
| 5/29/2024 | Review loan documents in preparation of POC | 1.00 | $215.00 | $215.00 |
| 6/6/2024 | Prepare 410A | 2.00 | $215.00 | $430.00 |
| 6/6/2024 | Redact Loan Documents / Exhibits | 0.20 | $215.00 | $43.00 |
| 6/19/2024 | Corresponded with client regarding POC prep and provided documents to client for validation prior to filing | 0.30 | $215.00 | $64.50 |
| 6/19/2024 | Received and Reviewed validated Proof of Claim | 0.20 | $215.00 | $43.00 |
| 6/19/2024 | Filed Proof of Claim | 0.30 | $215.00 | $64.50 |
| 6/19/2024 | Conduct Military Searches | 0.20 | $215.00 | $43.00 |
| 6/19/2024 | Submit Filed Proof of claim to Client | 0.10 | $215.00 | $21.50 |
| | **TOTAL** | **4.30** | | **$924.50** |

On its face, Attorney Velter's time entries seemingly support fees exceeding Pennymac's request by almost $300.  The Trustee does not dispute the reasonableness of the time spent reviewing the loan documents.  Nor does she deny the necessity of these tasks generally other than the military search.  As a result, the inquiry here is fairly narrow.

From the outset, the Court disagrees with the Trustee's assertion that the preparation of a proof of claim is a purely ministerial act for which attorneys' fees are unreasonable.  In *In re Susanek*, the Court held:

> In this Court's view, the preparation and filing of a proof of claim is not a perfunctory act.  Rather, the proper filing of a proof of claim is vital to the protection of a creditor's claim, and there are "serious and far-reaching implications of failing to file a proof of claim correctly."  A claim that is not properly drafted can be stripped of the presumptive validity accorded by Bankruptcy Rule 3001.  It logically follows that filing a supplement to a proof of claim (such as a notice of post-petition fees), is similarly vital to the protection of a creditor's claim and is not a ministerial act.[69]

---

[69] In re Susanek, 2014 WL 4960885, at *2.

15

Upon review of the time entries, the Court finds that only the redaction of exhibits and the literal filing of the proof of claim are purely administrative tasks. If the Court were to adjust the rate for those tasks, it would likely yield a difference of less than $50. The Court is also uncertain of the necessity of the "military search" in this context, but that represents only $43. Combined those issues amount to less than $100, meaning the Trustee is still $200 away from showing a tangible impact using the lodestar. Thus, the Court finds that $630 is reasonable for these services.

In sum, the Court concludes that only $242 of Pennymac's request for post-petition attorneys' fees are unreasonable and may not be recovered.

C.       The Reasonableness of the *Motion to Preclude*

Although the Court has determined that the *Notice* was objectionable in part, it is nonetheless appropriate to conclude with some observations about the reasonableness of the *Motion to Preclude*. This is particularly the case since Pennymac has alleged procedural abuse by the Trustee.

While Bankruptcy Rule 3002.1 permits the Trustee to ask the court to determine the reasonableness of fees, there must be a reason for doing so. Otherwise, it is inexplicably foisting the task on the Court. The reason must be *specifically articulated in writing* and served on the creditor in advance. Due process requires nothing less. That is not to say that new issues cannot arise during oral argument, but the dispute should be largely defined and understood on the papers.

Here, the *Motion to Preclude* was sparse and formulaic, seemingly identical to countless other motions filed by the Trustee over the years. It failed to acknowledge that a lodestar was attached to the *Notice*, making it difficult to understand the nature of the Trustee's objection. Her one specific objection – contesting the use of an attorney to prepare a proof of claim – should

16

also have been in doubt based on *Susanek*.  Worse still, the Trustee did not consider the materiality of her subsequent targeted objections given the low hourly rate and difference between the lodestar and the actual request.  After all, that is a stated part of her evaluation of debtor's counsel's fees.

That the Trustee "prevailed" against Pennymac in one respect not raised in the *Motion to Preclude* does not render these missteps harmless.  Defending a notice of post-petition fees creates a real economic consequence that someone must bear.  If the Trustee's objection is meritorious, either the lender or its counsel eat that cost.  But the impact is multiplied unnecessarily when they are forced to guess the nature of the objection.  In fact, Pennymac implies that generalized objections like this one are meant to unfairly dissuade lenders from seeking or defending their fees.

But what if the Trustee's objection is not meritorious or, as here, seemingly untethered to the outcome?  Despite Pennymac's assurance that it will not assess defense costs against the Debtor (which the Court will hold it to), there does not appear to be a legal prohibition from doing so.  And if a defense were at least partially successful, some fees would logically be reasonable.  As a result, a debtor who decided not to object to the *Notice* might wind up saddled with the cost of a meritless objection.  A troubling thought.

All of this is to reiterate that objections must be specific, in writing, and tailored to the facts of the case.

## V.      CONCLUSION

For these reasons, the Court will grant the *Motion to Preclude* only to the extent of $242.  It will be denied in all other respects.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: April 1, 2026

**GREGORY L. TADDONIO**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

18